UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIM ELAM**,<br>          Plaintiff,<br>   v.<br>**NATIONAL RAILROAD PASSENGER CORPORATION**,<br>          Defendant. | Case No. 15-cv-05127-YGR<br><br>**ORDER IN FAVOR OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 39 |

Plaintiff brings this action against defendant seeking review and vacatur of Award 14 (the "Award") of Public Law Board 7680 (the "Board"), pursuant to the Railway Labor Act, 45 U.S.C. sections 151 to 188, (the "RLA"). (Dkt. No. 7, FAC ¶ 1.) Specifically, plaintiff seeks review of the Board's decision not to award him back pay after the Board reversed plaintiff's termination. The RLA provides that a district court may enter an order setting aside or remanding awards and orders of an arbitral board for the following reasons: (i) failure of the board to comply with the requirements of the RLA; (ii) failure of the order to conform, or confine itself, to matters within the scope of the board's jurisdiction; or (iii) for fraud or corruption by a member of the board making the order. 45 U.S.C. § 153(p).

Currently before the Court are cross-motions for summary judgment. Defendant moves for summary judgment to deny plaintiff's petition for vacatur. (Dkt. No. 39.) Plaintiff moves for summary judgment seeking to vacate the Award on the ground that the Board erred by failing to confine the Award to matters within the scope of its jurisdiction. (Dkt. No. 49.)

Having carefully reviewed the pleadings, the papers submitted on these motions, the record before the Board when it issued the Award, and oral arguments from counsel at the hearing on the cross-motions for summary judgment held on October 11, 2016, and for the reasons set forth more fully below, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiff's

motion for summary judgment.

**I.     BACKGROUND**

Plaintiff's claims arise out of an Award issued by the Board related to the termination of his employment at Amtrak, due to his failure to pass certain qualification tests. The following undisputed facts relate to his employment and the Board's Award:

Plaintiff Tim Elam entered service with Amtrak as an Assistant Conductor on September 27, 2006. (*See* Dkt. No. 39-5 at 3, Award Statement of Facts.)

As part of maintaining their qualifications, conductors and assistant conductors are required to attend annual "Block Training" sessions. (*See* Dkt. No. 39-8 at 2.) During these Block Trainings, employees must be prepared to take a signal examination covering any territory on which they are qualified, and must score 100% on such exam. (*See* Dkt. No. 39-7 at 4; Dkt. No. 39-8 at 3, 5.) Conductors and assistant conductors are given four attempts to pass the signals exam, before being charged with failure to maintain required qualifications. (Dkt. No. 39-8 at 5.)

If an employee fails on the first try, the employee may continue in the block training class but cannot work their regular assignment until they pass the exam. (*Id.*) On a second failure, the employee will not be permitted to work their regular assignment until they pass an "Initial Qualification" signal exam. (*Id.*) On the third fail, the employee may return to their base to take the exam for a fourth time. (*Id.*) On the fourth fail, the employee will be charged by the division with failure to maintain their required qualifications and no further exams will be administered. (*Id.*)

Plaintiff attended his Block Training beginning on February 25, 2013. (*See* Dkt. No. 39-4 at 7.) Plaintiff was given the signals exam on February 28, 2013, but was unable to score 100% as was required. (Dkt. No. 39-5 at 3.) Plaintiff failed again during his next three attempts: once more on February 28, a third time on March 1, and a fourth time on March 25. (*Id.*)

On March 5, 2013, Amtrak issued disciplinary charges against plaintiff, and on March 11, 2013, Amtrak provided plaintiff with a revised notice of Formal Investigation. (Dkt. No. 39-14 at 2; Dkt. No. 39-15 at 2.) Specifically, Amtrak charged plaintiff with the following: "It is alleged that while attending Block Training beginning February 25, 2013, you unsuccessfully completed

1  the UPRR Signal Names exam twice on February 28, 2013 with a score of less than 100% and
2  once again on March 1, 2013 with a score of less than 100%. It is also alleged that a fourth UPRR
3  Signal Indications exam was administered on March 5, 2013 of which you unsuccessfully
4  completed that exam with a score of less than 100%." (Dkt. No. 39-15 at 3.)

A disciplinary trial was held on March 12, 2013. (*See* Dkt. No. 39-4 at 2.) On March 22, 2013, Amtrak terminated plaintiff based on the findings at the hearing. (Dkt. No. 39-17.)

After exhausting his remedies within Amtrak, i.e., the disciplinary trial and appeal (the "on-property proceedings"), plaintiff requested arbitration before a Public Law Board, pursuant to the Amtrak-SMART-TD collective bargaining agreement (the "CBA"). (Dkt. No. 39-6.) On March 6, 2014, Amtrak and the union agreed to establish a Public Law Board to hear certain cases, including plaintiff's, pursuant to a memorandum of agreement entered into by Amtrak and the union (the "MOA"). (Dkt. No. 39-22.)

On October 14, 2015, the Board issued its Award. In relevant part, the Board found:

> The record here establishes that the Claimant did not pass the four signals exams that he took at the end of February and beginning of March 2013. The Carrier is entitled to establish and enforce reasonable standards for its employees to meet, and there is no question that it is reasonable for the Carrier to require that Conductors know the signals in use on the territories they work in. However, the Board is of the opinion that unique facts and circumstances of this case call into question the fairness of the testing conditions faced by Mr. Elam, conditions that the Carrier has since modified. Expecting an employee to complete an important test requiring a perfect score in order to pass using an unfamiliar computer with only a directional button instead of a mouse, and under very short time constraints imposes a heavy burden on the employee. Now employees have the option of taking a paper test or taking the test on a regular desktop with a full keyboard and a mouse, and the time limit has been dropped. As the Organization pointed out, the signal missed by the Claimant on the first test was a common stop sign that everyone knows. In the preceding six months, he had successfully qualified on three different geographic regions, which suggests that there was some problem with the block tests or test conditions when he took them. Under the circumstances, the Claimant should have been given another opportunity to take the test before he was terminated.
>
> However, the Claimant cannot be returned to work until he passes the block signal test. He shall be offered a new opportunity to take the test, under the test conditions that currently pertain, with four attempts before he is disqualified. If the Claimant is successful in passing the signal test, he shall be returned to his former position, with seniority and benefits intact. However, as he was not actually qualified during the period he was off work, the Board will not order back pay.

3

(Dkt. No. 39-5 at 5.)

Plaintiff seeks vacatur of the Award on the grounds that the Board exceeded its authority (i) by not ordering back pay; and (ii) in reaching the merits because the disciplinary trial held on March 12, 2013 was untimely.

## II.   LEGAL FRAMEWORK

### A.   Summary Judgment Standard

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be

admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). It is not a court's task "to scour the record in search of a genuine issue of triable fact," but rather the Court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

### B.     Scope of Review

The decisions and findings of a public law board are final and binding upon both parties to the dispute. 45 U.S.C. § 153. A party that has litigated an issue before a public law board or the National Railroad Adjustment Board on the merits "may not relitigate that issue in an independent judicial proceeding. He is limited to the judicial review of the Board's proceedings that the [RLA] itself provides." *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 325 (1972) (internal citation omitted).

A court's review of a public law board's decision is "among the narrowest known to the law." *English v. Burlington N.R.R. Co.*, 18 F.3d 741, 743 (9th Cir. 1994) (internal citation and quotation omitted). The RLA allows courts to review board awards on three specific grounds: (1) failure of the board to comply with the RLA; (2) failure of the board to conform, or confine itself to matters within its jurisdiction; and (3) fraud or corruption. *Id.* Relevant to the claims here, plaintiff argues that the Award should be vacated based on the second prong, i.e., the Board failed to conform, or confine itself, to matters within its jurisdiction.[1]

---

[1] Plaintiff argues briefly that the Award should be vacated because, by conditioning his reinstatement on passing the qualifying exams, it impermissibly delegates to Amtrak the "ultimate judgment on the controlling issue" of plaintiff's reinstatement citing *Hodges v. Atl. Coast Line R.R. Co.*, 310 F.2d 438, 444 (5th Cir. 1962). *Hodges*, however, does not support plaintiff's position in this regard. In *Hodges*, the plaintiff filed a complaint seeking to enforce an award by the board. *Id.* at 441. As part of the award, the board ordered that the plaintiff be reinstated with back pay going back to October 1957, but only if the plaintiff were actually found to be physically fit enough to return to work on that date. *Id.* To determine physical capacity, the board ordered

1   With regards to that prong, a board "exceeds its jurisdiction if it issues a decision without
2   foundation in reason or fact." *Id.* "The basis of the Board's award must be rationally inferable . . .
3   from the letter or purpose of the collective bargaining agreement." *Id.* (internal citations and
4   quotations omitted). "[T]he interpretation of the collective bargaining agreement is for the Board
5   to decide and not the courts." *Id.* "[The issue] is not whether the arbitrator or arbitrators erred in
6   interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not
7   whether they grossly erred in interpreting the contract; it is whether they interpreted the contract."
8   *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987); *see also Singer v. Flying Tiger
9   Line Inc.*, 652 F.2d 1349, 1355 (9th Cir. 1981) ("[S]o far as the arbitrator's decision concerns
10  construction of the contract, the courts have no business overruling [them] because their
11  interpretation of the contract is different from [theirs]." (quoting *Steelworkers v. Enters. Corp.*,
12  363 U.S. 593, 599 (1960)), *abrogated on other grounds by McNaughton v. Dillingham Corp.*, 707
13  F.2d 1042, 1047 n.6 (9th Cir. 1983); *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*,
14  823 F.3d 524, 532–33 (9th Cir. 2016) (holding that in labor arbitration disputes, if the court
15  determines that the arbitration made "any interpretation or application of the agreement at all," its
16  inquiry ends).

17  A board exceeds it jurisdiction when its award "fails to draw its essence from an
18  agreement" and "when it ignores the plain language of the contract and 'manifestly disregard[s]'
19  the contours of the agreement." *Phx. Newspapers, Inc. v. Phx. Mailers Union Local 752, Int'l

---

compulsory medical arbitration. *Id.* The district court dismissed the complaint finding that the board's award was not a final order. *Id.* at 442. The Fifth Circuit held that the district court should not have dismissed the complaint, but rather enter "appropriate orders to effectuate the medical examinations and reports for use by the [board]." *Id.* at 443. The Fifth Circuit further held that while the board can rely on the medical reports, it, and not the medical experts, must make the ultimate determination and had the "duty to retain final jurisdiction to evaluate and determine the legal significance of any such medical reports." *Id.* at 444. Importantly, the Fifth Circuit did not vacate the award as being in violation of the RLA. *Id.* Here, the Board found that the plaintiff should be reinstated but that he would need to pass the signal tests before returning to his former position. Unlike in *Hodges*, the Board here established a firm requirement for plaintiff's reinstatement rather than delegating the decision to another division. Additionally, as defendant points out, the agreement establishing the Board specifically indicates that in "case a dispute arises involving an interpretation or application of the award, the Board, upon request of either party, shall interpret the award in light of the dispute." (Dkt. No. 39-22 ¶ I.) Thus, the concerns present in *Hodges* are simply not at issue here.

*Bhd. of Teamsters*, 989 F.2d 1077, 1081 (9th Cir. 1993) (internal citation omitted); *see also Wilson v. Chicago & N.W. Transp. Co.*, 728 F.2d 963, 967 (7th Cir. 1984) (vacating award holding that the board "may not depart from [the CBA's] clear and unambiguous provisions"); *Int'l Union of Operating Engineers, Local No. 9 v. Shank-Artukovich*, 751 F.2d 364, 366 (10th Cir. 1985) (vacating award where CBA did not give discretion on whether employer should pay for a violation). However, an "arbitrator is not bound by the four corners of the [CBA]" and is granted "leeway in interpreting a [CBA]." *Phx. Newspapers*, 989 F.2d at 1081. "[T]he agreement has to be seen as a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *Id.* (internal citation and quotation omitted).

Additionally, arbitrators are not required to "make the sorts of explicit or exhaustive 'findings of fact'" and "the reasons for arbitral rulings need not be spelled out in detail." *Sw. Reg'l Council of Carpenters*, 823 F.3d at 533. "Indeed, [a]rbitrators have no obligation . . . to give their reasons for an award at all." *Id.* (internal citation and quotations omitted).

If the Court finds that the Board exceeded its jurisdiction in issuing the award, it may remand for a new hearing, remand for a hearing subject to various procedural or substantive limitations, remand and allow the Board to makes its own determination as to how to proceed, or direct such further action by the Board as the Court deems appropriate. *See U. Transp. Union v. BNSF Ry. Co.*, 710 F.3d 915, 935 (9th Cir. 2013).

### C.  Scope of Materials for the Court's Review

In addition to the record before the Board submitted by defendant (Dkt. No. 37), plaintiff filed certain other exhibits and declarations averring to certain facts that were not before the Board. Defendant argues that the Court should strike and disregard such exhibits and declarations, specifically:

- Dkt. No. 49-17, Declaration of Tim Elam
- Dkt. No. 49-18, Elam's pay stub for February 25, 2013 through March 3, 2013
- Dkt. No. 49-19, Declaration of Kevin Thompson
- Dkt. No. 49-11, November 9, 2015 Letter to Elam regarding reinstatement procedures
- Dkt. No. 49-12, November 10, 2015 Email from Thompson to Amtrak
- Dkt. No. 49-13, June 7, 2016 Email from Saulsbury to Amtrak
- Dkt. No. 49-14, June 2016 Emails regarding scheduling signal tests and physical

7

examination for Elam
- Dkt. No. 49-15, November 11, 2015 Email from Sampson to Thompson

Defendant argues that such exhibits and declarations should be stricken from the record because the Court's review is limited only to the documents and matters that were before the Board. *Andrews*, 406 U.S. at 325 (holding that judicial review is limited to a review of the Board's proceedings); *U. Steelworkers of Am. v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981) ("Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator. To rule otherwise would be to thwart the national labor policy of encouraging the expeditious private arbitration of labor disputes without resort to the courts." (internal citations omitted)); *Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1063 n.2 (8th Cir. 2003) ("To raise this issue as the primary and controlling issue before the district court when it was not properly raised for the arbitration panel's consideration necessarily precludes it from review by the district court. The district court's review is limited to those issues that were raised before the arbitration panel."); *Horizon Air Indus., Inc. v. Airline Prof'ls Ass'n*, No. 13-CV-681-RSM, 2014 WL 2896001, at *4 (W.D. Wash. June 25, 2014) ("The Court agrees with the Union that its review must, and is herein, confined to the findings of fact of the Board.").

The Court agrees that its review is limited to the facts and documents that were before the Board. The court's decision in *Horizon Air* is instructive. There, the parties also sought to strike materials and allegations that were "inconsistent with and/or in addition to the findings of the Board." *Horizon Air Indus.*, 2014 WL 2896001, at *4. The court agreed that its review must be confined "to the findings of fact of the Board," and only refused to grant defendant's request because the defendant failed to specify the "facts and exhibits to which its motion to strike pertains." *Id.* Here, unlike the defendant in *Horizon Air*, the defendant has specifically identified the documents which it argues should be stricken. Plaintiff has offered no authority for the contrary position.

Accordingly, the Court does not consider and **STRIKES** from the record Docket Numbers 49-11, 49-12, 49-13, 49-14, 49-15, and 49-18. With respect to the Declaration of Tim Elam at

1 Docket Number 49-17 and the Declaration of Kevin Thompson at Docket Number 49-19, the
2 Court does not consider for the purposes of this motion any averments of facts that were not
3 before the Board.

**III.     DISCUSSION**

As previously referenced, plaintiff raises two arguments in seeking vacatur and remand of the Board's Award, specifically the Board exceeded its jurisdiction (a) under CBA Rule 25(q) by refusing to award back pay; and (b) under CBA Rule 25(f) in not finding that the disciplinary hearing against plaintiff was untimely. The Court addresses each, in turn.

**A.     Rule 25(q)**

Plaintiff contends that, pursuant to Rule 25(q) of the CBA, the Board had no choice but to award him with back pay after determining that he should not have been terminated. Specifically, the Board issued the following ruling:

> Under the circumstances, the Claimant should have been given another opportunity to take the test before he was terminated.
>
> However, the Claimant cannot be returned to work until he passes the block signal test. He shall be offered a new opportunity to take the test, under the test conditions that currently pertain, with four attempts before he is disqualified. If the Claimant is successful in passing the signal test, he shall be returned to his former position, with seniority and benefits intact. However, as he was not actually qualified during the period he was off work, the Board will not order back pay.

(Dkt. No. 39-5.) Rule 25(q) provides:

> If at any point in this appeals procedure or in proceedings before a tribunal having jurisdiction it is determined that the employee should not have been disciplined, any charges related thereto in the employee's personal service record will be voided and, if held out of service (suspended or dismissed), the employee will be reinstated with pay for all time lost and with seniority and other rights unimpaired.

(Dkt. No. 39-6, CBA Rule 25(q).) According to plaintiff, because the Board determined that plaintiff should not have been terminated, the Board had no choice but to reinstate him "with pay for all time lost and with seniority and other rights unimpaired." (*See id.*)

Defendant, on the other hand, argues that the Court may only find that the Board exceeded its jurisdiction where the CBA evinces a "clear intent to deny the arbitrator any latitude of

9

1    judgment" and "expressly forb[ids] the arbitrator to exercise any discretion." *Robinson v. U. Pac.*

2    *R.R.*, 245 F.3d 1188, 1194 (10th Cir. 2001) (internal citations omitted).  Defendant raises two

3    interpretations of the Award that it argues are consistent with the CBA:  First, defendant contends

4    that Rule 25(q) only requires back pay for "all time lost" as a result of the adverse action.  Second,

5    defendant argues that the Board's action here could be justified under CBA Rule 25(r), which

6    provides that if the arbitral board determines that the "discipline imposed should be modified, the

7    employee will be paid for all time lost in excess of such modified discipline."  (Dkt. No. 39-6,

8    CBA Rule 25(r).)  Under either interpretation, there would be no "time lost" for which plaintiff

9    deserved compensation because, although the Board found that he should not have been

10   terminated, it also found that he was not qualified to perform his job until he passed the requisite

11   examinations.  (Dkt. No. 39-5.)  Defendant cites several cases interpreting similar language in

12   similar contexts where the courts upheld the decision of the arbitral boards in denying back pay.

13   *See Air Line Pilots Ass'n v. E. Air Lines, Inc.*, 632 F.2d 1321, 1323–24 & n.2 (5th Cir. 1980)

14   (reversing district court's vacatur of award where the contractual language mandated that

15   employee "shall be paid for such time and benefits lost" if exonerated by the board); *Robinson*,

16   245 F.3d at 1192–94 (affirming award even where contract language noted that employee "will be

17   reinstated with full pay for the time he has been out of service" if discipline was found to be

18   unjust); *Zeviar v. Local No. 2747*, 733 F.2d 556, 558–59 (8th Cir. 1984) (same).

19     The Court agrees with defendant that the Board did not exceed its jurisdiction in refusing

20   to award back pay.  The decision and facts in *Eastern Air Lines* are parallel to the situation at

21   hand.  There, the pilot was terminated for failing to satisfy certain proficiency requirements

22   imposed by the airline.  *E. Air Lines*, 632 F.2d at 1322.  The board found that the company's

23   training was inadequate and ordered the pilot to be reinstated for the purposes of receiving

24   additional training.  *Id.*  However, as here, the award did not provide for back pay, nor did it

25   provide for reinstatement of seniority rights.  *Id.*  Additionally, as the Board did in the instant

26   matter, the board in *Eastern Air Lines* stated that should the pilot fail the proficiency requirements

27   again after further training, the company could again terminate him.  *Id.*  The challenged provision

28   of the agreement in *Eastern Air Lines* provided that if the employee were "exonerated," he "shall

1  be paid for such time and benefits lost in an amount which he would have ordinarily earned and

2  retained had he been continued in service for such period." *Id.* at 1323 n.2.  Based on such

3  agreement and the decision of the board, the district court remanded the award to the board for a

4  determination of whether the pilot was exonerated by the order and thus entitled to certain benefits

5  not included in the award.  *Id.*  The Fifth Circuit reversed, holding that the board acted rightly

6  "within the ambit of its authority," in finding that the program "had its faults" and that the pilot

7  also "had his share of inadequacies." *Id.* at 1324.  Thus, faced "with this setting, the [b]oard

8  fashioned a remedy which it considered appropriate:  reinstatement without full benefits." *Id.*

9        The facts here are not materially different.  No meaningful distinction exists between the

10  "exoneration" provision at issue in *Eastern Air Lines* and the "back pay" provision in the CBA in

11  the instant matter.  Additionally, Board did not find that plaintiff "should not have been

12  disciplined," only that he should have been given another opportunity to take the test before

13  termination.  (Dkt. No. 39-5 at 5.)

14        The only case plaintiff cites in support of his position that the Board did not have the

15  discretion not to award back pay is *Shank-Artukovich*.  Plaintiff does not persuade.  In *Shank-*

16  *Artukovich*, the relevant provision required the employer to pay damages whenever it violated

17  certain manning provisions, payable either to the employee aggrieved or to a general fund for

18  training if no such employee exists.  *Shank-Artukovich*, 751 F.2d at 366.  The arbitrator found that

19  the employer violated certain manning provisions, but did not require payment.  *Id.*  Thus, the

20  Tenth Circuit held that the arbitrator violated the express terms of the contract.  Here, the Board

21  had more flexibility to find that although plaintiff should not have been terminated, discipline was

22  proper for failing to pass the necessary qualification exams four times, thereby not triggering the

23  back pay provisions of Rule 25(q).  *See A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d

24  1401, 1403 (9th Cir. 1992) (holding that the "rule that arbitrators need not state their reasons

25  presumes the arbitrators took a permissible route to the award where one exists").

26        Accordingly, the Court declines to vacate the Award on grounds of the failure to award

27  back pay.

28

**B.     Rule 25(f)**

Next, plaintiff argues that the Board's failure to apply the strict procedural limitations of Rule 25(f) provides an additional and independent basis for vacatur of the award. Rule 25(f) provides:

> Trials on matters which involve employees held out of service will be schedule [sic] to begin within ten (10) days following the date the accused is first held out of service. If not so scheduled, the charge will become null and void, and the employee will be paid the amount he would have earned had he not been held out of service.

(Dkt. No. 39-6, CBA Rule 25(f).) According to plaintiff, he was officially held out of service on March 1, 2013, but the disciplinary trial was not held until March 12, 2013. Because the trial was one day after the contractually required deadline, plaintiff argues that the Board was bound by Rule 25(f) to render the charge against plaintiff "null and void" and order that plaintiff be paid the "amount he would have earned had he not been held out of service."

In support of his position, plaintiff cites *Wilson v. Chicago & Nw. Transp. Co.*, 728 F.2d 963 (7th Cir. 1984). In *Wilson*, the collective bargaining agreement contained a similar provision requiring hearings for serious offenses to be held within ten days of the date that employees are "removed from service." *Id.* at 965. There, the employees were officially held out of service on February 16, 1980 yet the hearing was not held until February 29, 1980. *Id.* The board acknowledged that the hearing was not held within the specified ten-day time limit, but reasoned that if the charges were dismissed, employees charged with serious infractions would receive better treatment than employees charged with less serious infractions, for which the employer had thirty days within which to hold a hearing. *Id.* at 967. The Seventh Circuit held that such a decision was an impermissible attempt by the board to "alter the existing agreement by ignoring the provisions mandating the dismissal of charges when the railroad fails to comply with the specified" time limit. *Id.*

The Award here is silent as to whether the disciplinary hearing held against plaintiff was timely. As discussed above, arbitration boards are not required to make explicit factual findings or even explain the reasoning behind their decisions, so long as it is possible to read an award harmoniously with the collective bargaining agreement. *U. Steelworkers of Am.*, 363 U.S. at 698;

*Sw. Reg'l Council of Carpenters*, 823 F.3d at 533; *A.G. Edwards & Sons, Inc.*, 967 F.2d at 1403 (the "rule that arbitrators need not state their reasons presumes the arbitrators took a permissible route to the award where one exists"). The Court must therefore determine if the Award can be read harmoniously with the CBA.

Defendant offers three bases upon which the Board could have decided against plaintiff's contention that the disciplinary hearing was untimely, any of which, the Court finds, could have supported the Board's issuing of the Award. Specifically:

First, defendant argues that the Board was restricted from considering plaintiff's arguments regarding timeliness because plaintiff failed to raise such argument in any of the on-property proceedings and only raised it for the first time before the Board. Pursuant to the MOA establishing the Board, the "relevant facts contained in the [parties'] brief" to the board "must have been presented to the other party during the on-property handling of the disputes." (Dkt. No. 39-22, MOA ¶ F.) Plaintiff argues that he was only precluded from raising new facts, not new arguments. Specifically, plaintiff contends that the date on which he was suspended and the date on which the trial was held were facts known to defendant at the time of the on-property handling, and he was therefore not precluded from raising it to the Board. However, as defendant argues, the MOA restricted the Board's jurisdiction to only those facts that were "presented to the other party" during the on-property proceedings. (Dkt. No. 39-22, MOA ¶ F.) The Board could have found, therefore, that only issues and facts that were actually raised to the other party during the on-property proceedings were properly before the Board, and therefore, rejected plaintiff's argument on that ground.[2]

Second, the Board could have found that defendant was never "held out service" and the ten-day limit only applies in such circumstance. (Dkt. No. 39-6, CBA Rule 25(f).) Specifically,

---

[2] Plaintiff also posits that defendant should be precluded from arguing that plaintiff waived the timeliness argument because defendant did not contest such in its brief to the Board. Plaintiff claims that after he submitted his brief to the Board arguing that the disciplinary hearing was untimely, defendant submitted its brief and failed to address plaintiff's timeliness argument. However, at oral arguments the parties agreed that defendant filed its brief to the Board before plaintiff, and because plaintiff had not raised the timeliness issue during the on-property proceedings, defendant had no reason to address it preemptively before the Board.

13

defendant argues that Rule 25(b) defines "held out of service" as applying only to situations where an employee has committed a "major offense," and thus, the Board could have found that the ten-day time limit was never triggered. Plaintiff counters that Rule 25(b) does not so limit the meaning of "held out of service," but only describes one application of the term. Neither party presented the Court with an authoritative definition of "held out of service" under the CBA. However, the Court must presume that the Board took a permissible route where one exists. *A.G. Edwards & Sons, Inc.*, 967 F.2d at 1403. Thus, absent evidence to the contrary, the Court finds that the Board could have permissibly concluded that plaintiff was not technically held out of service and thus the time limits under Rule 25(g), which imposes a 20-day time limit, rather than Rule 25(f), applied.

Finally, defendant argues that even if plaintiff were held out of service, the hearing was, in any event, timely. Defendant explains that the first day plaintiff could have been disqualified from service due to his lack of qualifications was March 2, 2013, because prior to that, he was still attending mandatory block training. Plaintiff counters that he was indisputably held out of service as of March 1, 2013. In support of this argument, plaintiff presents a Leave of Absence form in which Amtrak indicated that plaintiff was suspended as of March 1, 2013. (Dkt. No. 49-5.) Defendant contends that, contrary to the Leave of Absence form, plaintiff was not, in fact, disciplined on March 1, 2013, and the date listed on the Leave of Absence is a mere clerical error. Defendant further argues that the evidence before the Board demonstrated that plaintiff was provided additional training after he failed the exam on March 1, 2013 and was given another opportunity to take the exam on March 4, 2013, before any discipline was imposed. Again, presuming that the arbitrators took a permissible route to the award, the Court finds that the Board could have determined that plaintiff was not held out service until after March 1, 2013, and therefore, the hearing on March 12, 2013 was timely.

Accordingly, because any of the above reasons could have justified the Board's issuing of the Award, the Court finds that vacatur of the Award is inappropriate. *A.G. Edwards & Sons, Inc.*, 967 F.2d at 1403.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiff's motion for summary judgment.

The Court **SETS** a compliance hearing for **Friday, December 9, 2016** at **9:01 a.m.**, in the Federal Courthouse, 1301 Clay Street, Oakland, California, Courtroom 1. By **Friday, December 2, 2016**, defendant shall file a Proposed Form of Judgment. If compliance is complete, the parties need not appear and the Court will vacate the compliance hearing.

**IT IS SO ORDERED.**

Dated: November 14, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**